325-0543 William Sullivan Appellant v. Allison Schiman and Allie Anderson, LLC, Appelese. Thank you. Justice Pertani is not going to be able to join us this afternoon as a result of a family matter. So what we're going to do is wait for him to be able to listen to the oral arguments and watch them. Then once he's done that, we will set up a conference call with Justice Anderson and with me, and then we will confer, and then at that point, we will be issuing our decision. But please feel free to go ahead on the appellant. Sir, would you identify yourself for the record, please? May it please the Court. My name is William Sullivan. I'm the plaintiff appellant, and I'm appearing on my own behalf. Thank you, sir. Go right ahead. Thank you. This appeal presents two issues. The first issue is whether the circuit court's award of nominal damages for what it deemed a surgical airstrike on my reputation when defendants falsely accused me of sexually assaulting a patient. The second issue is the circuit court's refusal to impose Rule 219B damages when they filed sworn 216 denials that were later proven true at deposition at trial. So I'd like to begin with the damages issue. If the trial court awarded me $100 million in damages in this case, we'd still be sitting in these same seats. Only the defendant would be arguing that the judgment of $100 million was not appropriate compensation for the damages proven at trial. In this case, I was awarded $1 in nominal damages, and I'm arguing the same thing. The judgment of $1 is not an appropriate compensation for the damages proven at trial. The trial court found ample evidence of injury, but it stated it didn't know how to calculate damages in a defamation per se case. The reversible error with this ruling is that the trial court ignored evidence and used the wrong measure of damages. Both of those actions are sufficient for reversal under the manifest weight standard. So I'd like to briefly just go through what the court findings were. The court found that I proved defamation per se. It said, I think he met his burden of proof on all counts at the record at 557. The trial court found malice. There's zero evidence of sexual assault in this case, zero. Court finding it, page 454, referencing Mr. Perez. He knew or should have known the statement was false. Absolutely. Record at 558. And Ms. Scheinman did a surgical airstrike on Dr. Sullivan's reputation with this post. To me, the intent, I mean, that would just absolutely destroy your reputation. Record at 559. The trial court also found real harm. During trial, the trial court said, when I heard Dr. Sullivan testify, that's mental anguish. That guy had mental anguish. I saw a guy yesterday who felt like he learned like he had the death of a family member. And then he even went through the physical manifestations, inability to sleep, embarrassment, concern, changes in temperament, changes in the way I treated patients. That was on record at 562. The court also found that my testimony was compelling at 505 and credible at 560. So the trial court found defamation per se. It found malicious conduct, and it found credible testimony of an injury. Once those findings were made, a $1 reward is the wrong measure of damages. Why did the trial court use the wrong measure of damages? It repeatedly acknowledged uncertainty about how to calculate damages. It asked, how do you calculate damages? The record at 430. Give me the formula. Now, what's the formula? The record at 451. There's so many times when I thought, wow, that's an unsettled area of law. Thanks for the guidance, appellate court. That was on 556. Most important quote from the court was Judge Helen said, I'm certain I saw mental anguish as a damage. And I don't know how you calculate that on a defamation per se case. That was in the record at 450. And that statement's critical because the court didn't say there wasn't any harm. The court said it saw an injury, but it didn't know how to calculate damages. And because it didn't know how to calculate damages, it ignored its findings, and it used the wrong measure of damages. That's reversible error, and it's precisely why this appellate court's intervention is necessary. The trial court mentioned that there were no economic loss to support more than nominal damages. It mentioned there weren't any job consequences, that I didn't lose my hospital privileges, that I didn't have any problems with state licensing, or my malpractice didn't skyrocket. But that's not the rule of law in defamation per se cases. Gertz B. Robert Welch said actual injury includes impairment of reputation, personal humiliation, mental anguish, and suffering. Gibson v. Phyllis Morrison, Illinois, said the same thing. It upheld damages for personal humiliation and mental anguish. Economic loss isn't necessary to award more than nominal damages in a defamation per se case. The court also seemed to use an improper social media discount. It said that nominal damages were appropriate because the defamatory statements were made on Facebook rather than through a conventional media outlet. It said this is a Facebook post. It's not a credible news organization. That's on the record at 563. Most people assume it's false. It goes to the weight of damages on 564. And it's not the weight of some credible person putting this out. Anybody can post anything they want, again, on 564 on the record. That reasoning is also legally flawed. Nick Shirley used an iPhone and a handheld microphone to expose millions of dollars in fraud in Minnesota when other credible news organizations didn't. Social media magnifies the harm from defamation. It's easy to disseminate. It's repeatedly reshared. It's searchable. It's persistent. And once it's up there, it's difficult to remove, especially once it's been shared. And the trial court seemed to acknowledge this. It noted that Rodney Perez at one point ensured the post would stay on his Facebook feed and it'd gather traffic rather than dying on the vine. So Judge Helen realized that the permanence of social media. So it's difficult to reconcile that the court would simultaneously say that defendants lost a surgical airstrike on my reputation but then would reduce to nominal damages simply because that airstrike was launched from Facebook instead of Shaw Media. The defense provided a couple of pieces of rebuttal evidence. One was a video from Sergeant Bernard Larson about how they'd had complaints about me before. And the trial court specifically said it gave that evidence no weight on page 592. They also submitted an article that I wrote as an editor of a national publication, emergency medicine publication about physician burnout. And the article was omitted over my objections. There was no testimony explaining its contents. There was no testimony explaining even when the events occurred and whether the other stressors that were mentioned in the article would overcome damages from defamatory statements. The defendants provided that article to invite speculation. And the trial court didn't seem to take that bait. It said, I mean, is there any really surprise that life is a stressful event? Everybody's going to have stress. That was at page 501. I don't think this court should take that bait either. Even if other stressors did exist, they wouldn't defeat the damages caused by the defamatory statements made by the defendants. Otherwise, defamation defendants could escape liability when other victims had a complicated life. And then finally, with regard to damages, this wasn't a symbolic injury, which is the purpose of compensating with nominal damages. This was a case where the defendants maliciously caused an injury. One, because she got upset when her complaints didn't result in criminal charges against me. The other because, as the court said, he was a community activist who was stirring the pot and learning to or trying to gain more traffic to his Facebook page. I suffered harm. The trial court's nominal damage award doesn't compensate me for that proven harm. If I was paralyzed or if I suffered scars from burns due to negligence from the defendants, nor court would say, I'm awarding you $1 because I don't know how to calculate those non-economic damages. Mental injuries and emotional scars shouldn't be treated any differently. The trial court's ruling effectively tells future defendants they can maliciously accuse a physician of sexual assault in public, amplify that accusation, implore patients not to go to him, and then face only pocket change liability. That's not Illinois law. It's not an effective remedy, and it constitutes reversible error. Regarding the sanctions issue, that sanctions ruling should also be reversed. Rule 219 is mandatory. Reasonable expenses shall be awarded for unreasonable denials. Mr. Perez denied his identity. He denied his role as an administrator in his own Facebook group. He denied the authenticity of his own post. Only to admit those facts at oath under deposition. Exceptions for 219B are for good reason or if the matter was of no substantial importance. Neither exception applies here. There was never any good reason alleged or proven. And the issues that Mr. Perez denied were of substantial importance because they were central to the case. They went directly to his publication of defamatory statements, his recognition of his fault, republication of those statements, and the damages that he incurred. And the denials were also unreasonable. They were all matters that were within his personal knowledge. He knew his username. He knew whether he pinned the post. He knew whether he republished it. And he knew what he wrote himself. And he freely admitted those things under simple questioning during the deposition. The trial court denied sanctions because the deposition was far-ranging and it had a lot of issues that were hashed out there. But Rule 219B doesn't have a far-ranging deposition exception. The pertinent questions are whether the denials were unreasonable. They were. And whether expenses were incurred in proving the matters. They were. The fact that a deposition covers other issues doesn't erase expenses caused by the false denials. The trial court ruling in this regard condones falsifying statements and undercuts the plain language of Supreme Court Rule 219B. Also, with regard to Rule 137 sanctions, just as serious, Mr. Perez testified that he met with his attorney, Julie Eister, and that they came up with the responses to my 216 requests together. Ms. Eister then signed and notarized sworn false statements. Even a cursory inquiry of Mr. Perez would have revealed the truth of those answers. And that's not what happened. When I deposed Mr. Perez, I asked him, is this you? He said yes. Had Ms. Eister made that same question, she wouldn't have been able to notarize those answers truthfully. So it just shows she had little, if any, inquiry into the responses that were made. So to conclude, regarding damages, the trial court found defamation, malice, credible testimony, mental anguish. But it awarded only $1 because it didn't know how to calculate damages. A difficulty in valuing damages doesn't justify reducing proven harm to $1. The trial court's ruling applies a wrong legal measure of damages, and it's against the manifest way of the evidence. So I'm requesting that this court reverse the nominal damage award and either issue a mandate to the trial court to award me compensatory damages in an amount that this court deems appropriate, or remand to the trial court to make specific written findings that apply the actual controlling authority in this case and that discuss the way it applied to various evidentiary issues, such as the reach of the post, the permanence of the post, malice, credibility of the witnesses, rebuttal, damage testimony, and its assessment of the damages based on those issues. The court may consider remanding the case for an evidentiary hearing on damages, but we already did that, and the court seemed to have dug its heels in on the damage award. In the motion that I made to modify the damage award, the court said the nominal damages definition fit this case to an absolute T. That's where I felt there wasn't evidence produced at trial. That wasn't a record at 596, and the court said with the passage of time, my opinion remains the same. I got it right on page 602, so I don't know that remanding for a hearing on damages would be of much benefit. Regarding the sanctions, Rule 219B is mandatory. The court has a full record before it. The false denials containing Ms. Eister's signatures are in the common law record. The contradictory admissions are in the common deposition record. The expenses are documented, so I'm therefore requesting this court enter into order imposing sanctions for deposition costs of $1,258.97 plus interest directly, rather than remanding it for further proceedings. If the court chooses not to do that, then I'd request that it remand to the trial court for entry of a judgment in that amount for the reasonable expenses that I incurred in proving the facts Mr. Perez and his counsel unreasonably denied. That's all I have. I'd be happy to answer any questions the court has. Thank you. Justice Anderson, any questions? None for me. Thank you. I have none at this time. Ms. Russell, your case? Thank you. May it please the court. The judgment entered in this case is not against the manifest weight of the evidence. The plaintiff presented at trial a raft of witnesses, each of whom testified to his good character, to the fact that they didn't know anyone who believed the post that they read, if they read them, who had any negative opinion about him. He suffered no consequences at work, and none of the people there testified that they had any negative feelings about him or opinions about him. They testified that they didn't know anyone who had such negative opinions about him. There was no evidence of damage to his reputation. Isn't that sort of inherent when we're talking about cases of reputational harm? I mean, if I take out an ad in the New York Times and I call you a bunch of filthy names that are defamatory, I mean, do I really need to find every single person who read the article or the ad and who formed an opinion on you? No, I don't think that you do. But I do think that if you did that, there would have been evidence at trial regarding that post and evidence regarding the exposure. And I think it's very different. And Judge Helland examined this at trial. There's case law that talks about the fact that the form in which the comment is made matters. And here it was made in a Facebook post, in a Facebook group that's called something with the word scuttlebutt in it. And at trial, significantly, we filed a motion in limine because the plaintiff failed to obtain any evidence from Facebook regarding the exposure that anyone who read the post or how many people would have read the post. And so that motion in limine was granted. So there wasn't any testimony considered about the scope of who would have seen that post or how many views it got because the plaintiff failed to develop that evidence. So I think it's very different. And I see your point. You don't have to bring in a raft of witnesses who are going to say bad things about you. But if you're proving reputational harm and you don't develop the evidence about the reach of that Facebook post, and then you bring in the witnesses who all say that no one that they can think of believed it, I'd just be pointing out that it's not helpful to support the argument that there's damage. Also, I don't believe that Judge Helen's comments about how hard it is to quantify pain and suffering or mental anguish are comments that he meant literally that he didn't know what to do or did not know how to calculate the damages. Him commenting on that, I don't believe that was to be taken literally as if he didn't know what to do. He did know what to do. Thank you very much, appellate court. You don't think that that was frustrating or that he indicated he did not know if he's saying thank you very much, appellate court? I think he was saying that because he had trouble finding a whole lot of case law on point, and he was very interested in looking for a number of authorities on point. But I don't think that in the end he felt that he had an inability to do the job or to make the calculation. I think he did when he said he just didn't think that damages were proved in light of the rebuttal evidence that was provided with the article that he wrote during the time and published during the time that's relevant to this case, in which he discussed a litany of very sympathetic personal struggles that he was having at the same time that this was going on. In this case, he had a death in the family. His daughter was in a car accident. It's all very compelling and sympathetic events he was having in his life. His wife testified at the trial that during this time period he suffered a serious health concern and had prostate surgery. These are all reasons that during that time period he would be undergoing a great deal of stress and be losing sleep. I think that the trial court looked at that and weighed that against the other evidence and decided that in total the damages were nominal. Could I ask you to address the 219B issue? I'm sorry. Could I ask you to address the sanctions issue? Well, Mr. Perez is not my client. I understand. I'm talking about the judge's decision with regard to it. So I'm just asking. I'm sorry, not 219. Go ahead. I'm sorry. I'm asking about the sanctions and the judge's position with regard to the award or non-award of sanctions. I thought that he felt that there was no harm. And I don't have a detailed opinion about him doing that. I think that he felt that also during the trial we talked about, and I apologize, I don't have it handy, but it's in the record. There was case law that was discussed during the trial about the fact that if those discrepancies are rectified at trial, that that aggregates the harm. Even without the required criteria of 219B? I believe that was the case law that was discussed at trial, yes. Counsel, Mr. Sullivan makes, I don't want to put words in his mouth, seems to make an argument, sort of a floodgates argument that, you know, if an ER doctor is accused of sexually assaulting a woman and the damages are a dollar, that basically gives a license to anyone to say anything on social media and not really have any fear of repercussions. Maybe the trial judge had difficulty quantifying this in a four or five or six or seven figure sum. But, I mean, a dollar? That seems a little low. How do you address this floodgates argument? I don't think there is a floodgate that's open. I think that these cases, in my view, are all decided on the facts. I think here, this was a post that was clearly not credible. No one believed it. Couldn't find anyone even online who said they really believed it. And no evidence was introduced at trial that anyone believed it. I don't think that the floodgates argument really is useful because I think that here, with the fact that we were able to rebut a lot of his damages arguments, that it's just a very different circumstance that doesn't create a floodgate situation. Great. What about the denial on the 219 request to admit? Could you address that? Are you asking for my personal opinion about it? I'm asking you to address it as a plea for purposes of this appeal. What do you think with regard to the court's decision to failure to sanction for the denial under a request to admit? I don't know. I mean, I don't represent that party. And I wasn't involved in that part of the case. But I think that if the court decided that based on the discussion at trial about the case law that we raised on the record, and again, I apologize, I don't have that portion of the transcript in front of me, and I didn't prepare anything on that issue. But we did discuss case law on the record that said that. And if that was the case law, then if clarifying those issues at trial abrogated the harm, and therefore they shouldn't be sanctioned, if Judge Helland followed that case law, then I think he made the right decision. Thank you. Anything further? Thank you. No, just finally, I'll add that, as I was saying, there was a great deal of positive evidence at the trial and evidence that Dr. Sullivan had other struggles during this time that would be superseding and intervening causes of his distress. I think that the court accurately assessed that the damages were nominal and made the right decision when he issued that order. And if the court doesn't have any other questions, that's the end of my remarks. Thank you. Justice Anderson? There was some testimony, I think, that the post had been seen by over 15,000 people. Is that not what Perez testified to? Well, that testimony is kind of misleading because, and he clarified it later, there were apparently 15,000 members in the groups where these posts were made. But he didn't have any information, and he testified later and clarified. He didn't know that that doesn't mean 15,000 people saw it. And in order to know how many people saw a post on Facebook, you have to go in and look at the analytics, and Facebook has to authenticate all of that. So he did say that, but then he later clarified that that was just the number of people who were members of these groups. But he had no way to quantify how many people actually viewed the post. There could be members of these Facebook groups that haven't logged into Facebook in years or don't ever look at it. Just being a member of a page doesn't mean that you necessarily saw anyone post. All right. Thank you. Thank you. Anything further, Justice Anderson? No. Thank you, then. Mr. Sullivan, your rebuttal? Yes, ma'am. Just one point. Ms. Russell raised the issue about how everyone thought I had good character and that no one believed the posts. A defamation injury doesn't require a universal belief from every listener. Even some disbelief doesn't eliminate the humiliation, the anxiety, the mental anguish, the future professional consequences of those actions. The record contains evidence, and I presented evidence at trial, that there were two patients that once they learned I was the physician working in the month after that post was made, that they left the emergency department. They didn't want to see me. There was another person that was actually in the comments of Mr. Perez's post named Amanda Jarman that said, I wouldn't put it past a doctor like this. So there was some negative treatments of my reputation just in that testimony. And the fact that a lot of people who knew me well knew that I would never do something like this doesn't negate all of the other 14,990-something potential people that would have seen the statement. That's all I have. Thank you. Thank you. Justice Anderson, any questions? No other questions. Thank you. Okay, the court thanks both of you for your arguments this afternoon. Once Justice Pertani's had an opportunity to review these oral arguments, he will conference with Justice Anderson and with me. And at that point, our opinion and our decision will be ruttered forthwith.